FILED

2016 Mar-22  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| JANA BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14-cv-02229-JEO |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Jana Barnes brings this action pursuant to 42 U.S.C. § 405(g),

seeking review of the final decision of the Acting Commissioner of Social Security

("Commissioner") denying her application for disability insurance benefits

("disability benefits") and supplemental security income ("SSI").  The case has

been assigned to the undersigned United States Magistrate Judge pursuant to the

court's general order of reference.  Upon review of the record and the relevant law,

the undersigned finds that the Commissioner's decision is due to be affirmed.

## I.    PROCEDURAL HISTORY

On January 27, 2011, Plaintiff filed an application for disability benefits and

SSI, alleging disability beginning March 14, 2007.  (R. 51).[1]  Her claims were

---

[1] References herein to "R. ___" are to the electronic record found at document 8.

denied on April 11, 2011.  On April 28, 2011, Plaintiff requested a hearing with an

Administrative Law Judge ("ALJ").  An initial hearing was held on May 11, 2012,

before Judge Michael Brownfield.  Testimony was presented by medical expert Dr.

James Anderson as well as Jerry Keith Haney, Plaintiff's brother  (R. 51).

A second hearing was held on January 4, 2013.  At this hearing, testimony

was presented by Janice Fox, Plaintiff's mother, and vocational expert James Hare.

Following that hearing, the ALJ issued a decision, finding that Plaintiff was not

disabled within the meaning of the Social Security Act  (R. 51-63).  Plaintiff then

requested that the Appeals Council review the ALJ's decision.  That request was

denied on September 20, 2014.  (R. 1-5).  On that date, ALJ Brownfield's decision

became the final decision of the Commissioner.  (R. 1).  This action followed

pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly

circumscribed.  The function of the court is to determine whether the decision of

the Commissioner is supported by substantial evidence and whether proper legal

standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson

v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the

record as a whole to determine if the decision reached is reasonable and supported

by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983).  Substantial evidence is, "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is, "more than a scintilla, but less than a preponderance."  *Id.*

The court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan,* 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   STATUTORY REQUIREMENTS AND DEFINITIONS

For a claimant to be entitled to disability and SSI benefits, she must be disabled as that term is defined in the Social Security Act.  42 U.S.C. § 423(d)(1)(A) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Additionally, pursuant to 42 U.S.C. § 423(d)(2)(A), a claimant is not disabled unless their disability, when considered along with their age, education, and work experience, prevents them

from performing some sort of substantial gainful work at a job which exists in the national economy.

### III. STATEMENT OF FACTS

Plaintiff was 35 years old on her alleged disability onset date of March 14, 2007.  (R. 62, 211).  She has a ninth grade education and has semi-skilled past relevant work history as a certified nurse assistant, cashier/stocker, and kennel assistant.  (R. 62, 98-100, 216-17, 234-40).  Her medical history includes remote seizures – the last one was in 2006, compression fractures in her back also dating to 2006, migraine headaches that are under control via medication, and cardiovascular issues including a mild heart attack in 2010.  (*Id*. at 54, 60, 117).  She applied for disability benefits and was denied the same in 2007.  (*Id*. at 118).

The ALJ determined that she has severe impairments, including chronic back pain, chronic myalgia, coronary artery disease, and major depressive disorder.  (R. 53).  Plaintiff complains her side effects from medication include problems with long and short term memory and persistent fatigue.  (R. 105-06).  She is generally inactive and complains of depression.  (R. 107-09, 112).

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with "a sit/stand option" and other restrictions.  (R. 59).  Based on vocational expert testimony, the ALJ also determined that "there are

jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. 62-63, 82-86).

The ALJ further determined that Plaintiff was not under a disability from her alleged onset date until the date of the decision. (R. 63). Accordingly, he concluded that she was not entitled to benefits under the Act. (*Id*.)

## IV.   REVIEW AND FINDINGS

Plaintiff alleges that the ALJ erred in his decision making in that (1) he failed to obtain a neuropsychological evaluation ("NPE") of her, and (2) he did not have medical expert Dr. James Anderson testify about the inconsistencies in Dr. Christopher Randolph's reports. (Doc. 14 at 11). The Commissioner retorts that Plaintiff has not satisfied her burden of demonstrating that she is disabled. (Doc. 15 at 3). Additionally, she notes that "Plaintiff does not dispute that the ALJ's RFC finding fully accommodates the limitations from her physical impairments." (*Id.* at 4).

### A.   NPE

Plaintiff argues that the ALJ's duty to develop a full and fair record mandates that he obtain "neuropsych testing" and not just a "consultative pscyh exam." (Doc. 14 at 12). The Commissioner responds that a consultative examination was not necessary because the record is "more than sufficient to support the ALJ's decision on Plaintiff's claim." (Doc. 15 at 4).

The law is clear that Plaintiff bears the burden of proving that she is disabled. *Ellis v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir.2003) ("claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of this claim."). Additionally, as noted above, an ALJ's findings need only be supported by substantial evidence.

The record reflects that while Plaintiff complained of disabling mental health symptoms, she was treated with medication and she received no inpatient or outpatient psychiatric treatment. (R. 57, 431). The ALJ had Plaintiff consultatively examined on two occasions – once by a psychologist and once by a psychiatrist. In March 2011, consulting psychologist Dr. Robert Summerlin found that Plaintiff's mental health status was normal. He identified no issues with regard to her memory, attention, or concentration. (*Id.* at 56, 431-32). He also found at she was suffering from depressive disorder and that she had a GAF Score of 60, meaning she had only moderate symptoms and limitations. (*Id*. at 56).[2]

During Plaintiff's previous claim in 2007, Dr. David Wilson noted that Plaintiff had, among other things, a "significant impairment in aspects of her short-term memory, and she has a very impaired working memory…" with a GAF of 45.

---

[2] Dr. Robert Estock, a State agency psychologist consultant, completed a Psychiatric Review Technique form concerning Plaintiff on April 4, 2011. Therein, he concluded that Plaintiff was not suffering any sever mental impairments. (R. at 435-447). He also stated that Plaintiff's "allegation of some mental symptoms are partially credible, and the severity of symptoms is inconsistent with the objective medical findings." (*Id*. at 447). The ALJ rejected Dr. Estock's opinion finding no severe mental impairment. (*Id*. at 58).

(*Id.* at 57, 118).  Premised on this notation, the ALJ in the present case stated he

would refer Plaintiff for further mental health testing.  (*Id.* at 57, 119).  Because of

this, the ALJ in August 2012 ordered additional psychological evaluation that was

done by Dr. Christopher Randolph.  (*Id.* at 57).  In his opinion, the ALJ found as

follows concerning Dr. Randolph's evaluation:

> Dr. Randolph's report on his mental status examination of [Plaintiff]
> was cursory.  His diagnostic impressions were major depressive disorder;
> recurrent, panic disorder; and borderline personality disorder.  He raised a
> question of borderline intellectual functioning and learning disability;
> however, his evaluation of [Plaintiff] does not support these diagnoses, nor
> are these diagnoses supported by the record as a whole.  Dr. Rudolph
> assigned a GAF of 50, meaning moderately severe symptoms and
> limitations, although a GAF of 51 would be in the moderate symptoms and
> limitations range.  He provided that he saw no impairments in "reality
> testing" that would preclude employment but that [Plaintiff] had
> impairments that would be a limiting factor" in finding and maintaining
> employment.  He noted that although [Plaintiff] reported a long history of
> symptoms, she had not sought psychiatric help.

(R. at 57, 507-08).  Dr. Randolph also completed a Medical Source Statement at

about the same time wherein he concluded that Plaintiff's "ability to understand,

remember, and carry out instructions was not affected.  Nor was her ability to

interact appropriately with supervisors, coworkers, and the public, as well as

respond to changes in a routine work setting."  (R. at 57, 509-11).

When Plaintiff's representative questioned Dr. Randolph's assessment,

particularly when compared to Dr. Wilson's earlier assessment, the ALJ noted that

Plaintiff "mischaracterizes Dr. Rudolph's report.  Dr. Rudolph did not find 'no

impairment in testing that would preclude employment," but found "no impairment

in **reality** testing that would preclude employment." (R. at 57 (emphasis in

opinion)).  The ALJ further found:

> Dr. Rudolph did find that [Plaintiff] had impairments that would be a
> "limiting factor" in finding and maintaining employment…. He did not find,
> however as implied…, that [Plaintiff's] impairments would entirely preclude
> employment.  I have in fact indicated significant limitations in the below
> residual functional capacity based upon [Plaintiff's] mental impairments.
> Moreover, although [Plaintiff] has been treated for her psychological
> symptoms by her primary care providers, there is no evidence of formal
> inpatient or outpatient psychiatric treatment in the record.  The treatment of
> [Plaintiff's] mental health symptoms by her primary care providers has been
> routine and conservative in nature.  The allegations that [Plaintiff] received
> psychiatric treatment as a teenager are not supported by objective medical
> evidence in the record….  The … implication that Dr. Rudolph was unaware
> of or ignored evidence of psychiatric treatment in the record is unfounded.  I
> do agree … that Dr. Rudolph's Medical Source Statement is not entirely
> consistent with his report.

(R. at 58).  Following the foregoing analysis, the ALJ concluded:

> …. Although I find that [Plaintiff's] mental impairments cause
> moderate functional limitations, I conclude that the record as a whole
> suggests that [Plaintiff] has exaggerated her symptoms as well as medication
> side effects for disability purposes.  In terms of opinion evidence, I find that
> the opinions of both Dr. Summerlin and Dr. Rudolph are entitled to some
> weight to the extent consistent with the below residual functional capacity
> and to the extent that both found at most moderate limitations….

(*Id.*)

The Commissioner argues that this evidence is more than sufficient to

support  the ALJ's decision concerning Plaintiff's claim.  (Doc. 15 at 6).  She also

states that "the only basis for Plaintiff's argument that the ALJ should have

obtained an NPE rather than Dr. Randolph's psychiatric examination is medical

expert Dr. Anderson's testimony at the first hearing…. However, Dr. Anderson's

testimony did not mandate that the ALJ arrange an NPE…." (*Id.* at 6 (citations

omitted)).

The court agrees with the Commissioner for a number of reasons. First, the

consultants' findings provide substantial evidence supporting the ALJ's decision.

Dr. Randolph noted that he saw no impairment in "reality testing" that would

preclude employment but found that Plaintiff's impairments would be a "limiting

factor" in finding and maintaining work. (R. at 508). He further indicated,

however, that Plaintiff had unaffected abilities to understand, remember, and carry

out instructions; interact appropriately with others; and respond to changes in a

routine work setting. (*Id.* at 509-10).

Second, the only basis for a NPE is grounded in the opinion of Dr.

Anderson, which did not mandate a NPE. Testifying at Plaintiff's hearing, Dr.

Anderson, who is a medical physician and not a psychologist or psychiatrist, stated

that Plaintiff's treating physician had wanted a NPE but was unable to have one

done due to financial difficulties. (R. 116-17). Dr. Anderson felt Plaintiff needed

to be evaluated further. (*Id.* at 118). Contrary to Plaintiff's assertion, he did not

"opine[] that he could not express his medical opinion concerning [Plaintiff's]

mental health impairments because they had not [been] fully evaluated." (*See* Doc.

14 at 10).  He felt Plaintiff's situation needed to be further evaluated.  (R. at 118).

When the ALJ asked Dr. Anderson whether he thought Plaintiff should have an

NPE or a psychiatric examination, he stated, "I think the [NPE] would be helpful

to her in more than one way, although we're basically talking a disability hearing.

But, her treating physicians would be helped by having a copy of an [NPE] in her

file." (*Id*. at 116).  Dr. Anderson did not opine that an NPE was required.  Nor did

he indicate that a psychiatric examination would be inadequate.  His preference for

an NPE appears to be premised on Plaintiff's treatment needs.  When the ALJ

indicated a neuropsychologist might not be available and he might sent Plaintiff to

"a psychiatrist CE" with a copy of Dr. Wison's report and a reliable longitudinal

historian, Dr. Anderson agreed that that would be appropriate.  (*Id*. at 119).  Dr.

Anderson also indicated that Plaintiff needed to be "under the case of mental health

professionals to maximize the impact of her functioning" instead of "a family

doctor writing a pill [prescription]." (*Id*.)

Third, even if it is assumed that Dr. Anderson indicated that an NPE was

necessary, the ALJ was not required under the circumstances to order such.  An

ALJ is charged with the responsibility of developing the record, evaluating the

relevant evidence, and assessing a claimant's RFC.  *See* 20 C.F.R. §§

404.1545(a)(1)& (3), 404.1546(c), 416.945(a)(1) & (3), 416.946(c); SSR 96-8p,

1996 WL 374184.  The ALJ's decision in this case to seek a psychiatric

examination instead of an NPE is appropriate in view of the foregoing.  Plaintiff

has not demonstrated otherwise.

Fourth, in evaluating Plaintiff, Dr. Randolph, a mental health specialist, did

not require or even request an NPE.  There is no suggestion in the record that he

believed an NPE was necessary to further assess Plaintiff's disability status.

### B.    Inconsistencies in Dr. Randolph's Report

Plaintiff also complains that the ALJ did not have Dr. Anderson testify about

the inconsistencies in Dr. Randolph's reports.  (Doc. 14 at 11).  Specifically,

Plaintiff argues that "[i]f the ALJ felt the need to have a medical expert at both

hearings, he should have consulted the medical expert during both hearings.  He

should not have jumped to medical conclusions."  (*Id.*)  This is the full extent of

his argument on this matter.

An "ALJ has a duty to develop the record fully and completely."  *Wilson v.*

*Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).  However, he is not "obligated to seek

independent, additional expert medical testimony where the evidence is sufficient

to support" his decision in this instance.  *Id*.  The evidence, including the

consultants' reports and Plaintiff's history of conservative treatment, supports the

ALJ's decision.  The ALJ was not required to seek any additional input from Dr.

Anderson.  This is particularly true where the ALJ noted "that Dr. Rudolph's

Medical Source Statement is not entirely consistent with his report."  (R. 58).  The

ALJ noted the inconsistency in Randolph's analysis of the medical evidence and properly determined her RFC as he was required to do. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2008) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). Contrary to Plaintiff's assertion, the ALJ did not "jump to medical conclusions." (Doc. 14 at 11). His decision reflects his intent to seek a necessary medical opinion to develop the record and assess Plaintiff's situation.

Additionally, the court finds that the record does not include any evidence that Plaintiff has sought mental health treatment of a sort one would expect from a person whose mental illnesses are so severe as to render her disabled.[3] (R. 58). The ALJ also noted that "the record does not contain any opinions from treating physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined by [the ALJ's] decision." (*Id*.) The record supports the ALJ's finding that Plaintiff's symptoms are not as severe as she claims. (*Id*.) The objective medical evidence does not indicate that, when properly treated, the depressive episodes make Plaintiff incapable of performing substantial gainful activity.

---

[3] To the contrary, Dr. Randolph, who performed the most recent psychiatric evaluation on Plaintiff, described her lack of psychiatric treatment as "interesting" in light of her report to him of a "long history of symptoms" (R. 508).

While Plaintiff has sought some mental health services, particularly from May 2013 until February 2014, they have only consisted of brief, cursory, half-hour counseling visits with a social worker.  (R. 18-42).[4]  Plaintiff further claims that she received inpatient psychiatric treatment as a teenager, though no documentary evidence in the record supports this claim.  Even if this information is accurate, that treatment would have been received many, many years prior to her period of alleged disability, which began in March 2007.  All of this evidence and information leads the court to conclude that while Plaintiff may have mental health issues requiring treatment, the ALJ reached the proper conclusion on the present record, finding that her situation is not so severe as to render her disabled within the definition Social Security Act.  At worst, according to Dr. Randolph's evaluation, her mental health issues constitute a "limiting factor" in Plaintiff's ability to find and maintain gainful employment.  (R. 508).

## VI.   CONCLUSION

For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be affirmed.

---

[4] The court also notes that the therapy session records from CED Mental Health Center repeatedly indicate that Plaintiff was encouraged to find personal and social activities outside of the home that would occupy her time and possibly assist with her depression.  These same notes contain little evidence that Plaintiff complied with the recommendation.  (R. 18-42).

**DONE,** this the 22nd day of March, 2016.

_____

**JOHN E. OTT**
Chief United States Magistrate Judge